UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD PERRY, an individual

      Plaintiff,

-v-

SRIVIDYA SRINIVASAN, DEANA HAYES,
KATIE MYSEN, OAKLAND UNIVERSITY, the
OAKLAND UNIVERSITY BOARD OF TRUSTEES,
DEAN CHRISTOPHER LANCE COLEMAN,
ASSOCIATE DEAN FOR SCHOOL OF NURSING,
in his official and individual capacities,

      Defendants.

Case No. 2:25-cv-12991

Hon. _____

**Shinn Legal Services, PLLC**
Jason M. Shinn (P64453)
Attorneys for Plaintiff
2466 Orchard Lake
Sylvan Lake, MI 48320
jshinn@shinnlegal.com
P: 248-850-2290

**PLAINTIFF'S COMPLAINT
– AND –
<u>JURY DEMAND</u>**

Plaintiff Richard Perry, for his Complaint against the above captioned Defendants, states:

<u>**INTRODUCTION**</u>

**1.**     In 2024, Mr. Perry successfully completed most of his classes needed to earn his degree in Oakland University's Nursing Program and was only about six credit hours away from earning his nursing degree.

**2.**     But in 2024, Oakland University abruptly denied Mr. Perry access to his classes and, consequently, his education and future employment opportunities were halted. Oakland University took this remarkable interference without investigating the matter, including not allowing Mr. Perry

to present his side, evidence, or counter the allegations as Oakland University promised students like Mr. Perry it would do in its policies and procedures. And Oakland University further violated its policies and Mr. Perry's rights when it later added allegations not previously raised or properly revealed to Mr. Perry, which left him unfairly prejudiced.

3.     Equally troubling, Oakland University's radical abandonment of basic due process and equal protection was prompted by uninvestigated allegations of a proctor (Defendant Sari Srinivasan) against Mr. Richard Perry and reported to Oakland University in a phone call.

4.     Specifically, Mr. Perry reported to Defendant Sari Srinivasan he had been improperly disciplined and harassed by a female nurse after he questioned and raised concerns about her telling Perry to administer a schedule IV medication that he was prohibited from administering under OU policy. Unfortunately, this female nurse turned out to be Defendant Srinivasan's good friend and mentor. Defendant Srinivasan responded by retaliating against Mr. Perry by making misconduct accusations to OU, refusing to continue as his preceptor, and later refusing OU's request to place Mr. Perry under another preceptor.

5.     Srinivasan's "report," about Mr. Perry starkly contrasted with his academic success and near completion of OU's program. Presumably OU agreed as its internal written communications show OU tried to have Mr. Perry placed with another preceptor so he could complete his degree. Surely OU would not have intervened on Mr. Perry's behalf to allow him to continue in the nursing program, including to treat patients, had OU believed Mr. Perry was unfit or engaged in wrongful conduct justifying dismissal as claimed by Srinivasan.

6.     Yet Defendant Srinivasan spurned OU's initial efforts to allow Mr. Perry to continue under a different preceptor – one who was not improperly biased against Mr. Perry as Defendant Srinivasan had shown herself to be. Because of Defendant Srinivasan's refusal to allow Mr. Perry to

continue under a different preceptor, OU claimed he could not complete his education and terminated him as a student. Thus, in addition to the false, defamatory, tortious, and discriminatory facts harming Mr. Perry, OU later starkly violated its own policies and procedures to carry out the wrongful dismissal of him from OU's Nursing Program.

7.      Defendants have wrongfully deprived Plaintiff of his property interest in his education, which cannot be done without due process. See *Doe v. University of Cincinnati,* 872 F.3d 393, 396 (6th Cir. 2017). Defendants are also discriminating against Plaintiff based on his gender in violaiton of Michigan and Federal Law.

8.      So this is an action brought against Defendants under 42 USC §1983 four deprivation of Plaintiff's rights under the First and 14th Amendments to the United States Constitution, for deprivation of Plaintiff's right to freedom of speech, due process, and equal protection under the Michigan Constitution, for breach of contract, defamation, tortious interference, and intentional infliction of emotional distress based on Michigan common law, and for discrimination under the Michigan Elliott- Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*

## PARTIES, JURISDICTION AND VENUE

9.      Plaintiff Richard Perry lives in Oakland County, Michigan. Before filing this Complaint, he was enrolled in the Oakland University's School of Nursing Program (Nursing Program). His claims come from actions taken against him by Defendants for alleged violations of the OU's Policy and Procedures and related actions.

10.     Defendant Srividya Srinivasan is an individual. Upon information and belief, she lives and works in Oakland County.

11.     Defendant Oakland University ("OU or the "University") is a public entity created under the Constitution of the State of Michigan.

12.     Defendant Oakland University Board of Trustees (the "Board") is responsible for all practices, policies, and procedures relating to and governing the dismissal of students from the University. It is a constitutional corporate body operating and governing the University, within this district.

13.     Defendant Christopher Lance Coleman is the current Associate Dean for OU's Nursing Program. He is responsible for the conduct-based dismissal of students from the Nursing Program. He has sued in his official and individual capacities.

14.     Defendant Ms. Deana Hayes was the Associate Dean, Undergraduate Program for OU at all times relevant to Plaintiff's Complaint.

15.     Defendant Dr. Katie Mysen was a full-time instructor for OU at all times relevant to Plaintiff's Complaint.

16.     This is an action for due process violations under the Fourteenth Amendment to the United States Constitution under 42 U.S.C. §1983; for violations of Title IX, 20 U.S.C. § 1681, *et seq.,* and for violations of Michigan's Elliot-Larsen Civil Rights Act, MCL § 37.2101, *et* seq.

17.     This Court has subject matter jurisdiction over Plaintiff's § 1983 and Title IX claims under 28 USC §1331 (federal question) § 1343 (jurisdiction over deprivation of Constitutional rights claims).

18.     This Court has supplemental jurisdiction over Plaintiff's ELCRA claims under 28 U.S.C. § 1367. The Court has jurisdiction to issue injunctive and declaratory relief under 28 USC §2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

19.     Venue is proper in the Eastern District of Michigan under 28 USC §1391, as all parties are within the Eastern District of Michigan and the events described in this lawsuit took place mainly in the area in the Eastern District of Michigan.

4

<u>**FACTUAL STATEMENT**</u>

20.     In 2024, Plaintiff was enrolled in OU's Nursing Program.

21.     At that time, Plaintiff successfully completed most of his classes needed to earn his degree in OU's Nursing Program. Specifically, Mr. Perry had completed about 58 credits of the approximately 69 credits needed to complete the programming. And he had earned at least satisfactory marks, but often higher grades, reviews, and assessments from instructors.

22.     Thus, in 2024, Mr. Perry needed only about six credits to complete OU's Nursing Program and earn his degree.

23.     By this time, the investment Mr. Perry made in this education was well over $50,000.00.

24.     Among the final classes he took towards his degree requirements was OU's Capstone Class NRS 4026 ("OU Class NRS 4026"). This class included a clinical experience where Mr. Perry was required to be overseen by an OU preceptor while he completed 126 hours, which amounted to about 11 shifts. But without a preceptor, Mr. Perry could not complete this class.

25.     OU assigned Defendant Srinivasan to be Mr. Perry's preceptor. At that time, Defendant Srinivasan was a nurse in the Royal Oak Beaumont pediatric unit.

26.     Reflecting on the type of person Mr. Perry is, he sent a warm, appreciative thank you email to Defendant Srinivasan in May 2024. In this email, he thanked her for her "… time and sharing [her] knowledge …" He also explained he was "looking forward to" working under her.

27.     After the initial email referred to above, Mr. Perry and Defendant Srinivasan would have many email discussions about his clinical experience. Relevant to this lawsuit, these email communications show nothing to support the concerns Defendant Srinivasan later raised after Mr. Perry raised concerns and reported her friend and mentor. Despite constant communication between

Defendant Srinvasan and Mr. Perry, she never raised or even hinted that she had any concerns with Mr. Perry's performance until after his report.

## COUNT I:
## VIOLATIONS OF 42 USC §1983, FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS PROPERTY AND LIBERTY INTERESTS AGAINST DEFENDANT OU

28.    Plaintiff incorporates by reference and realleges the preceding allegations.

29.    The Fourteenth Amendment to the U.S. Constitution states that no state shall "deprive any person of life, liberty, or property, without due process of law."

30.    Plaintiff has a property and liberty interest in his education. See *Doe v. University of Cincinnati,* 872 F.3d 393, 396 (6th Cir. 2017).

31.    Fourteenth Amendment due process protections are required in a higher education disciplinary decision at public institutions.

32.    The Due Process Clause of the U.S. Constitution guarantees fundamental fairness to students like Plaintiff facing exclusion and/or expulsion from the educational process based on discipline. A student must receive notice **and** an opportunity to be heard. *Flaim v Med. Coll. of Ohio*, 418 F.3d 629, 633-34 (6th Cir. 2017).

33.    While the University's process for dismissing a student from the Nursing Program pays lip service to the preceding legal requirements with reference to a "Student Performance Review Committee (the "Review Committee")," that review never happened and OU failed to provide legally required due process protections.

34.    Around June 23, 2024, Mr. Perry while working his clinical shift, he was confronted by a female nurse. At first, this nurse refused to identify herself and immediately became hostile, harassing, and belittled Mr. Perry in an unprofessional, unprovoked manner.

35.    The nurse also berated Mr. Perry over an issue about administering certain drugs and IV drip medications.

6

**36.** In reliance of OU's Policies and Procedures, Mr. Perry intially refused to administering the preceding. He even objected to doing so and raised concerns about it because OU's policy expressly prohibited him from administering. See OU Nursing Program Capstone Course Syllubus, NRS, 4026. The nurse, however, later characterized Mr. Perry's concerns and objection as insubordination.

**37.** Upon information and belief, Mr. Perry's female classmates who were also subject to the same preceding OU policy, did not have to violate the policy.

**38.** Alternatively, Mr. Perry's female classmates were not subject to retaliation and other wrongful acts for following the OU's policy that Mr. Perry was told to disregard.

**39.** Her conduct was so extreme and unprofessional that Mr. Perry immediately reported the ncident to his preceptor and Defendant Sari Srinivasan.

**40.** Initially she was receptive to Mr. Perry's concerns as he explained how the confrontation was harassing, abusive, confrontational, and unprofessional, and unprovoked. But Defendant Srinivasan's demeanor changed when she realized her mentor and friend was the aggressor.

**41.** She then seemingly discounted Mr. Perry's concerns, focused on "victim blaming" issues about Mr. Perry's demeanor, but not his performenace, as an excuse for the nurse's conduct.

**42.** Even so, Defendant Srinivasan never said or alluded to actions or conduct by Mr. Perry that would justify his removal from the program.

**43.** Later, Defendant Srinivasan continued her retaliation by telling OU she refused to continue as Mr. Perry's procter. Based on statements OU officials made to Mr. Perry, Defendant Srinivasan offered no explanation or reason that justified Mr. Perry's removal from the program.

7

**44.**    Bolstering this conclusion, OU Officials first offered to have Mr. Perry transferred to another proctor to continue his clinical work, which involved patient care. OU would not have offered and worked to have Mr. Perry to continue to work with patients **if** he posed a risk to their care.

**45.**    Defendant Srinivasan, however, escalated her retaliation by refusing to allow Mr. Perry to transfer to a different proctor.

**46.**    Upon information and belief, Defendant Srinivasan also threatened to actively intervene to prevent Mr. Perry's transfer, including jeopardizing OU's relationship with her hospital if her demands were not met.

**47.**    Corroborating the preceding contentions, on June 24, 2024, Mr. Perry was emailed by OU faculty, Ms. Katie Mysen with OU faculty Nicole Clark included on the email. Ms. Mysen advised that Defendant Sari Srinivasan complained purportedly about Mr. Perry's "performance" and "attitude." A copy of this email is below and reads:

---

**From:** Katie Mysen

**To:** Nicole Clark, Richard Perry                                              || Previous | Next

**Date:** Monday, June 24, 2024, 1:40 PM

**Attachment:**

---

Dear Richard,

I hope this message finds you well. I am writing to inform you that I received a phone call from your preceptor expressing some significant concerns about your performance and attitude during your preceptorship.

Given the nature of these concerns, it is important that we address them promptly. Therefore, you are required to refrain from attending clinical until we can have a meeting to discuss these issues in detail.

We will be scheduling a meeting with myself, Dr. Clark, and you as soon as possible. I will inform you of the date and time once it has been arranged.

Please understand the importance of this matter and take this time to reflect on the feedback received.

Thank you for your attention to this matter.

Best regards,

---

**48.**    OU's email is significant on several fronts: First, there is no mention of any allegations that Mr. Perry's performance or attitude violated any OU policy or workplace standard, which would be false.

49.     Second, while Mr. Perry was a student at OU, female nursing students greatly outnumbered male students like Mr. Perry.

50.     Upon information and belief, female nursing students routinely outnumber male nursing students at OU.

51.     Thus, while Mr. Perry and his female nursing student peers had the same OU policy restricting the administering of IV drip medications, OU started the disciplinary process against Mr. Perry but not his fellow female nursing students.

52.     Third, it defies credibility that Mr. Perry having completed most of his classes and needing only six more credits suddenly engaged in "significant" attitude or performance issues that Defendant Sari Srinivasan raised at the end of his clinical she supervised as his proctor. Again, despite repeated communications and interactions her purported "concerns" about his "performance" and "attitude" are nowhere to be found leading up th the preceding email. That email having been sent right after Mr. Perry's reporting of Defendant Sari Srinivasan's friend and colleague's harassing, retaliory, and unprofessional conduct. Instead, such "concerns" only materialize after his report.

53.     Fourth, OU – per Ms. Mysen's email – rushed to punish and retaliate Mr. Perry with no regard for any due process or investigation. He was immediately punished with no hearing, evidence, or opportunity for Mr. Perry to respond.

54.     Thus, OU violated its policies and procedures and all principles of fair and due process rights in its rush to punish Mr. Perry and later ambushing him at a meeting to dismiss him from its Nursing Program.

55.     Specifically, OU communications show that with a single phone call from Defendant Sari Srinivasan alleging she had concerns about Mr. Perry's performance or attitude, and with no

9

findings, investigation, or even a chance for Mr. Perry to presents facts countering the allegations, OU denied him access to his clinical classes and his educadtion was halted.

**56.** Mr. Perry was immediately punished for his reporting, speech, and concerns, with no due process or opportunity to defend himself.

**57.** Such actions by OU violated Mr. Perry's substantive-due-process rights because he was deprived of two constitutionally protected property interests: a property interest in continuing his education and a property interest in a transcript unmarred by expulsion, incomplete or unsatisfactory grades, misconduct, and/or any finding of responsibility for violating OU's policy.

**58.** On **June 25, 2024**, Mr. Perry was emailed by OU faculty, Ms. Katie Mysen. She advised that she and OU faculty member Nicole Clark would meet with him on Monday, July 1**, 2024** to "discuss [his] preceptorship." No further explanatation or details were given to Plaintiff to prepare for this meeting. Here is a copy of that email:

**From:** Katie Mysen

**To:** Nicole Clark, Richard Perry                                                              || Previous | Next

**Date:** Tuesday, June 25, 2024, 9:34 AM

**Attachment:**

Hi Richard,

Dr Clark and I would like to meet with you on Monday, July 1st at 1pm to discuss your preceptorship. We can meet in my office, 2034 HHB.

Please let me know if this works for you.

Thank you,

Dr Mysen

**59.** Thus, Mr. Perry was put in the unfair positoin of being unable to continue his education until he met with OU officials. But when it comes to due process, the "opportunity to be heard" is the

constitutional minimum. *Doe v. Baum*, 903 F3d 575, 581 (CA 6, 2018); citing *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S. Ct. 779, 58 L. Ed. 1363 (1914).

60.     And if a student is accused of misconduct, the university must hold some hearing before imposing a sanction as serious like suspension. *Doe, supra,* 903 F3d at 581.

61.     Further, Mr. Perry was given less than a week, in a major holiday week, to try to prepare for a meeting and obtain supporting evidence to respond to vague "concerns" about his performance and attitude.

62.     In this regard, OU did not provide him with any documents or written notifications about the issues it purportedly used to punish and dismiss him.

63.     Also, OU did not allow Plaintiff any opportunity for direct or cross-examination of any witnesses, including Defendant Srinivasan, as required under applicable law. See, e.g., *Doe, supra,* 903 F3d at 581 ("when the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination.").

64.     At the meeting, OU also raised issues it did not previously tell Mr. Perry about and related to his attendance at his clinical.

65.     But with this issue essentially sprung on him at the meeting, OU gave him no chance to provide any rebuttal evidence that he could have gathered with proper notice. Consider for example, with proper notice, Mr. Perry could have shown issues used by OU to punish him were demonstrably false through documents, video, or other evidence records. But the lack of notice with appropriate documentation precluded Mr. Perry from organizing and presenting this evidence.

66.     This lack of due process and notice severely prejudiced Mr. Perry.

67.     It also underscores that Defendants violated the substantive component of the Due Process Clause because they engaged in an arbitrary abuse of executive power so egregious that it

shocks the conscience of the public, especially considering how close Mr. Perry was in completing the program.

68.     Further, at the meeting, OU reprimanded Mr. Perry over the insubordination allegations referenced above involving Mr. Perry's reliance on OU's policy that expressly prohibited students like him from certain drugs and IV drip medications under OU Nursing Program Capstone Course Syllubus, NRS, 4026.

69.     Mr. Perry explained his reliance on this policy for why he first refused the nurse's order to administer the medication. Yet to his shock and dismay, OU officials at the meeting did not know about this policy. Even so, disciplining a student like Mr. Perry for "insuborination" simply because he followed OU's policy is arbitrary, capricious, and, upon information and belief a pretext for the unlawful discrimination he suffered by OU and/or its employees, agents, and associates.

70.     Not to be deterred by these facts, the OU officials purportedly claim they relied on "several organizational policies," to discipline him involving vague standards like:

       **A.** "Student exhibited a lack of engagement, self-direction, and follow through."

       **B.** "Student displayed behavior that does not align with [OU's] standards and policies relating to Workplace Incivility."

       **C.** "Student charted prior to completing interventions for a patient receiving an IV infusion …"

       **D.** "Student completed fraudulent documentation on a time log."

71.     Again, these purported violations are not found before 2024.

72.     Also, OU's "Judicial Process" expressly provides that "[a]ll academic misconduct allegations are forwarded to the Dean of Students office and adhered to the student judicial system."

OU denied Mr. Perry this right and all opportunities afforded under the system.  See School of Nursing Fall 2023 – Summer 2024 Student Handbook, p. 26.

73. Among the rights and due process Plaintiff would have been entitled to under the judicial system, were:

A. The right to have an advisor, staff, or student of Plaintiff's choice.

B. Receive a written statement of the charges before any hearing.

C. Bring witnesses to a committee with direct information relating to the case in present exhibits at a committee hearing.

D. Be advised, in writing before the hearing of the names of any witnesses who will testify at, and exhibits to be presented at, the hearing. In information from character witnesses must be presented in writing.

E. Ask questions of the witnesses.

F. Received 72-hour notice of the time, date, and place of a committee hearing along with a list of potential witnesses and exhibits to be presented.

G. Receive written notification of the decision reached by the panel concurrently and the right to request an appeal in writing.

See School of Nursing Fall 2023 – Summer 2024 Student Handbook, p. 26 and its link to the Student Code of Due Process, https://oakland.edu/deanofstudents/student-code-of-conduct/due-process/

74. Plaintiff received none of the preceding rights at any point before the preceding meeting or after.

75. After this meeting by a letter dated July 15, 2024, OU told Plaintiff he was dismissed from OU's Nursing Program.

76.     Procedural due process is "implicated by higher education disciplinary decisions." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017).

77.     At a minimum, Plaintiff was entitled to (i) notice of the charges against him, (ii) an explanation of the evidence against the student; (iii) a meaningful opportunity to be heard and present counter-evidence and/or cross examination of witnesses; (iv) if the credibility of the allegations rest on a complainant, the university must provide a way for the adjudicative body to evaluate the complainant's credibility and "to assess the demeanor of both the accused and his accuser;" and (v) to have unbiased decision maker hear this evidence before the deprivation of his property interest in his education could be permissible. See *Univ. of Cincinnati*, 872 F.3d at 399–400. None of this happened and Plaintiff has been deprived of due process protections.

78.     Here, OU's "panel" played the tripartite role of investigator, prosecutor, and judge who had pre-determined his guilt based only on Defendant's Srividya Srinivasan say so.

79.     Upon information and belief, OU and its Nursing School deans and instructors were also beholden to the hospital Defendant Srinivasan worked for regarding providing OU's nursing students hospital/clinical experience. Thus, they were also biased against Mr. Perry and/or compelled to find against his interests to preserve OU's relationship with the hospital.

80.     Thus, Mr. Perry's due process rights were also violated because OU's officials' involvement created a bias such as to preclude Mr. Perry from having an impartial hearing.

81.     As a direct and proximate result of Defendant's' unlawful actions, Plaintiff has and will suffer irreparable harm, injury, and damages. These damages include, but are not limited to the denial of educational opportunities; denial of the ability to receive a degree from OU, or even go to it again; a permanent disciplinary record which he must contend with and explain for the rest of his life; denial of future educational and employment opportunities including graduate school and career choices;

false, permanent findings and discipline on his record, which did not occur; damage to his standing and associations in his community in imposition of a stigma or other disability that forecloses his freedom to take advantage of other educational or employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

**COUNT II:**
**TITLE IX, 20 U.S.C. § 1681 – DISPARATE TREATMENT BASED ON SEX**
**<u>(AS TO DEFENDANTS OU AND BOARD OF REGENTS)</u>**

**82.**     Plaintiff incorporates by reference and realleges the preceding allegations.

**83.**     Title IX of the Education Amendments of 1972 (Title IX) states that no person in the United States shall, based on sex, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance. 20 U.S.C.S. § 1681(a). Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available.

**84.**     Title IX prohibits discrimination based on sex in educational institutions, including OU. Title IX applies to an entire school or institution if any part of that school receives federal funds.

**85.**     Upon information and belief, Defendants receive federal funding.

**86.**     Both the Department of Education and the Department of Justice have issued regulations under Title IX that require a school to adopt and publish grievance procedures providing for the "prompt and equitable resolution of student . . . complaints alleging any action which would be prohibited by" Title IX or regulations. See 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice).

**87.**     The procedures adopted by a school covered by Title IX must "accord[] due process to both parties involved." See *id.*

15

88.     Defendants have violated Plaintiff's rights under Title IX by treating him differently because of his sex. Defendants have limited or outright denied his due process rights because of his gender.

89.     Defendants have intentionally deprived Plaintiff of the due process rights provided to female nursing students.

90.     Defendants took the actions against plaintiff described above even though they were aware Defendant Srinivasan's concerns in contentions lacked any prior documentation or support and the truthfulness was questionable under the circumstances.

91.     An incorrect outcome has resulted in the expulsion of Plaintiff, the withholding of his credits and further education, and the erroneous outcome will continue to occur if he is not allowed to return to OU to complete his education.

92.     As a direct and proximate result of Defendant's' unlawful actions, Plaintiff has and will suffer irreparable harm, injury, and damages. These damages include, but are not limited to the denial of educational opportunities; denial of the ability to receive a degree from OU, or even attend it again; a permanent disciplinary record which he must contend with and explain for the rest of his life; denial of future educational and employment opportunities including graduate school and career choices; false, permanent findings and discipline on his record, which did not occur; damage to his standing and associations in his community in imposition of a stigma or other disability that forecloses his freedom to take advantage of other educational or employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

**VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT**
**(MCL §37.2010, ET SEQ. DISPARATE TREATMENT ON THE BASIS OF GENDER**
**(ALL DEFENDANTS)**

93.     Plaintiff incorporates by reference and realleges the preceding allegations.

94.     Defendants OA is an "educational institution" under MCL 37.2402.

95.     Defendants Coleman, Trustees, Hayes, Mysen, and Srinivasan are "agents of an educational institution" under MCL § 37.2402.

96.     Plaintiff is a white male, over the age of 40. At all times relevant to the complaint he was a student in OU's nursing program.

97.     OU's nursing program is predominately made up of female students, instructors, and proctors who also oversee and, in the case of Defendant Srinivasan have sole or substantial discretion over the success or failure of students like Plaintiff in the OU nursing program.

98.     Under ELCRA, Defendants were prohibited from discriminating against Plaintiff based on his sex by interfering with and denying him is use of the University or its benefits, services, activities, or programs.

99.     Defendants were also prohibited from excluding, expelling, limiting, or otherwise discriminating against Plaintiff in the terms, conditions, or privileges of his enrollment in the institution, based on his sex.

100.    As described above, Plaintiff was denied the full usage and benefits of the institution and its services, and was excluded in limited in the terms, conditions, and privileges of the institution based on his sex.

101.    Based on his sex, Plaintiff was denied the proper and full use and implementation of the institutions policies and procedures; was denied a degree and the ability to graduate timely from the institution; was improperly issued a restraint from attending his clinical; and was then incorrectly and unfairly expelled.

**102.**     The preceding violations of the ELCRA have denied Plaintiff, based on his sex, the terms, privileges, services, and opportunities of the institution, to which he was entitled.

**103.**     These preceding violations of the ELCRA was also intentional discrimination, motivated by Plaintiff sex.

**104.**     As a direct and proximate result of Defendant's' unlawful actions, Plaintiff has and will suffer irreparable harm, injury, and damages. These damages include, but are not limited to the denial of educational opportunities; denial of the ability to receive a degree from OU, or even attend it again; a permanent disciplinary record which he must contend with and explain for the rest of his life; denial of future educational and employment opportunities including graduate school and career choices; false, permanent findings and discipline on his record, which did not occur; damage to his standing and associations in his community in imposition of a stigma or other disability that forecloses his freedom to take advantage of other educational or employment opportunities; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation.

## **RELIEF REQUESTED**

Plaintiff seeks a judgment against Defendants:

    **A.** an injunction prohibiting all defendants from further use of their policy because either as written or through its implementation it is unconstitutional and is a deprivation of due process rights;

    **B.** a ruling that, as a matter of law, Plaintiff's due process rights were violated.

    **C.** An award of interest, cost, and reasonable attorney fees; and

    **D.** whatever other equitable relief seems appropriate at the time of final judgment.

    **E.** Compensatory damages in whatever amount Plaintiff is found to be entitled to;

F.  exemplary damages in whatever amount is found to be entitled;

G.  punitive damages in whatever amount he is found to be entitled; and

H.  an award of interest, costs, reasonable attorney fees, and expert witness fees.


Respectfully submitted,

Shinn Legal, PLC

Date:  September 19, 2025          By:      /s/Jason M. Shinn
                                   Attorney for Plaintiff
                                   2466 Orchard Lake Rd.
                                   Sylvan Lake, MI 48320
                                   P: 248-881-2290
                                   jshinn@shinnlegal.com


## PLAINTIFF'S JURY DEMAND

Plaintiff Richard Perry, through his attorneys, demands a jury trial as to all issues in this cause that are so triable.


Respectfully submitted,

Shinn Legal, PLC

Date: September 19, 202          By:    /s/Jason M. Shinn
                                 Attorney for Plaintiff
                                 2466 Orchard Lake Rd.
                                 Sylvan Lake, MI 48320
                                 P: 248-881-2290
                                 jshinn@shinnlegal.com


4812-9467-9964, v. 1

19